**Willie C. KENDALL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 80–CV–1905.

United States District Court, E.D. New York.

July 8, 1983.

Michelle Weston, Patterson, Brooklyn, N.Y., for petitioner.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Reena Raggi, Asst. U.S. Atty., Brooklyn, N.Y., for respondent.

## DECISION AND ORDER

BRAMWELL, District Judge.

Petitioner, Willie C. Kendall, moves this Court pursuant to section 2255 of title 28 of the United States Code, for an order vacating his plea of guilty to bank robbery, entered on October 16, 1979. Specifically, petitioner contends that he was mentally incompetent at the time he entered his guilty plea, due to the side effects of certain drugs he was taking to control his epileptic condition. Petitioner further contends that his attorney failed to adequately assess his mental condition prior to the entry of his plea. I will address each claim individually.

PROCEDURAL BACKGROUND

Petitioner filed the instant application on July 10, 1980, alleging four grounds in support of his claim: (1) that he was mentally incompetent at the time he pleaded guilty; (2) that he was coerced into giving a confession; (3) that he was induced to plead guilty by the prosecutor's threat of maximum consecutive sentences; and (4) that he

was denied the effective assistance of counsel at the time of his plea. By Decision and Order dated June 29, 1981 this Court dismissed petitioner's application as meritless.

On September 28, 1982 the Second Circuit reversed this Court's decision and remanded the matter for the sole purpose of conducting a hearing to determine the merits of petitioner's mental incompetency and ineffective assistance of counsel claims. Hearings were held on December 8, 1982 and January 7, 1983.

## MENTAL INCOMPETENCY CLAIM

The medical records indicate that petitioner suffers from epilepsy and, indeed, that he has suffered from this disease since long before October 16, 1979, the date he pleaded guilty. The records further indicate that prior to his incarceration at the Metropolitan Correctional Center, petitioner was taking daily doses of Dilantin and Phenobarbital to control his epileptic symptoms. The physician at the MCC, however, based upon information supplied to him by petitioner on his September 28, 1979 admission, ordered that petitioner be given a daily maintenance dose of 300 mg of Dilantin, alone. Indeed, Phenobarbital was not added to his daily regimen until November 7, 1979.

Petitioner now asserts two separate grounds in support of his mental incompetency claim. First he claims that, due to the side effects of Dilantin, he was unable to understand the significance of his actions at the time he entered his plea of guilty. Secondly, he contends that the administration of Dilantin, alone, without Phenobarbital, on the date of his plea, rendered him incompetent to enter this plea. As I will discuss below, each of these grounds is meritless.

There is no dispute that petitioner orally received 300 mg of Dilantin at 8:00 p.m. on the evenings of October 15, 1979 and October 16, 1979. Nor is there any dispute that petitioner had been receiving this exact amount of Dilantin for some time prior to the aforementioned dates, and that the dosage received was well within the normal maintenance range. Instead, petitioner alleges that the side effects of this drug rendered him disoriented and, accordingly, unaware of the consequences of his acts on October 16, 1979.

Petitioner offers no evidence to support his claim, other than the pharmaceutic information flyer which is normally packaged with the drug Dilantin. This flyer indicates that the typical side effects to Dilantin include drowsiness, dizziness, mental confusion and transient nervousness. Significantly, neither at the hearing nor in his supporting papers has petitioner alleged experiencing any of these specific side effects either before, during or after the time he entered his plea.

On the other hand, petitioner's defense attorney, Ms. Marion Seltzer, testified at the hearing and assured this court, that had petitioner appeared dazed, confused, or disoriented at any time during her dealings with him, she would have noted this in her files.[1] Ms. Seltzer's files contain no such notation. Moreover, Ms. Seltzer was emphatic in stating that had she had any doubt as to petitioner's ability to understand the proceeding or its consequences, she would never have allowed him to plead guilty.[2]

A report submitted by Dr. Roger W. Davenport, a clinical neurologist, further indicates that it is unlikely that, due to Dilantin's side effects, petitioner was disoriented at the time of his plea.[3] Dr. Davenport reports that the maximum side effect likely to be produced by 300 mg of oral Dilantin is "a little drowsiness" but further notes that in patients who have received Dilantin in the past such an effect is minimal, if at all existent.[4] He also reports that he has never encountered a situation where a 300 mg

---

1. Transcript of Hearing, December 8, 1982, at 15.

2. *Id.*

3. Letter from Doctor Roger W. Davenport, March 4, 1983.

4. *Id.*

does has resulted in a mental torpor rendering the patient unaware of his actions or surroundings.[5]

In view of the foregoing, this Court is satisfied that petitioner was not incompetent, due to the adverse effects of Dilantin, on October 16, 1979. Accordingly, this portion of his mental incompetency claim is dismissed as meritless.

Petitioner next contends that because he did not receive combined doses of Phenobarbital and Dilantin on the day of his plea, he was unable to fully understand the nature of his actions. Petitioner has submitted a letter from Michelle Benson, a registered pharmacist, in support of this contention.[6]

Ms. Benson writes that, when given in combination with Dilantin, Phenobarbital acts to speed the rate of metabolism of Dilantin, thereby lowering the blood levels of this drug. Consequently, whenever Phenobarbital is rapidly removed from this drug regimen, the metabolism of Dilantin is decreased and a resulting increase in Dilantin blood levels ensues. This increased blood level results in an increased susceptibility to seizures.[7]

As discussed earlier, Ms. Seltzer, petitioner's defense attorney, noted nothing unusual in petitioner's affect or behavior either during plea negotiations or at the time of his plea. Nor does this Court recall petitioner appearing dazed, disoriented or confused on the several occasions he was present in Court. Indeed, it is inconceivable that had petitioner been afflicted with seizures, regardless of their intensity, these would have gone unnoticed by the Court, MCC personnel, Ms. Seltzer and the prosecutor. Nor does petitioner claim that he experienced any specific seizure activity during this time. As a matter of fact, it appears that a seizure would have been very unlikely under the situation posited by Ms. Benson (the *rapid* removal of Phenobarbital from the drug regimen), as the record clearly indicates that petitioner last received Phenobarbital at least a week to ten days prior to his plea.

In view of the foregoing, together with the fact that plaintiff first raised the instant claim on April 18, 1983, long after the hearings on plaintiff's incompetency claim were held, this Court finds that plaintiff's claim is speculative, at best, and devoid of merit. Furthermore, after reviewing all hearing testimony and all papers submitted by both petitioner and the government, this Court is satisfied that petitioner's plea of guilty was entered knowingly, intentionally and intelligently.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Lastly, petitioner contends that he was denied the effective assistance of counsel during plea negotiations. Specifically, he claims that Ms. Seltzer failed to properly assess his mental condition at plea negotiations and on the day he entered his plea. Consequently, he claims that Ms. Seltzer allowed him to enter this plea, despite the fact that he was unable to fully appreciate the nature and consequences of his actions.

As just discussed, petitioner has failed to allege or prove any facts to support his mental incompetency claim. Moreover, as mentioned before, Ms. Seltzer testified under oath that had petitioner appeared dazed, incoherent or disoriented at any time during her dealings with him, it would have been her normal practice to have noted this in her files, and to have postponed all further proceedings. Again, Ms. Seltzer's notes concerning her four meetings with petitioner contain no such notation. Having dealt with Ms. Seltzer on numerous occasions, and knowing her to be an extremely competent, diligent and experienced defense attorney, this Court has no reason to doubt the truth of her testimony. Moreover, this Court finds that petitioner's bold, unsubstantiated allegation falls far short of establishing that Ms. Seltzer's representation was of such a nature as to make "a farce and a mockery of justice". *Ricken-*

5. *Id.*

6. Letter from Michelle Benson, April 8, 1983.

7. *Id.*

*backer v. Warden,* 550 F.2d 62, 65 (2d Cir. 1976), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977).

In sum, this Court finds that petitioner has failed to meet his burden of proof with respect to his mental incompetency and ineffective assistance of counsel claims. *See Williams v. United States,* 481 F.2d 339, 346 (2d Cir.1973), *cert. denied,* 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 248 (1974). Accordingly, his petition for a writ of habeas corpus is hereby denied in all respects.

The Clerk of the Court is directed to serve a copy of the DECISION and ORDER on all parties.

IT IS

SO ORDERED.